**GREENSFELDER et al. v. GOODALL CO.**

No. 12555.

Circuit Court of Appeals, Eighth Circuit.

Dec. 10, 1943.

Rehearing Denied Jan. 5, 1944.

Joseph J. Gravely, of St. Louis, Mo. (John D. Rippey, of St. Louis, Mo., on the brief), for appellants.

Walter F. Murray, of Cincinnati, Ohio (Murray Sackhoff & Paddack, of Cincinnati, Ohio, and Edmund C. Rogers and Kingsland, Rogers & Ezell, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is to reverse a decree in a suit for declaratory judgment which declares that the Goodall Company, a Maine Corporation, by making and selling coats in accordance with their Giuseffi patent No. 2,166,566, applied for August 17, 1938, granted July 18, 1939, and exemplified by exhibit No. 1 preserved with the record, has not infringed the claims of Rubenstein patents No. 2,152,093, dated March 28, 1939, and No. 2,204,152, applied for June 27, 1938, and granted June 11, 1940. The owners of the Rubenstein patents counter-claimed in the suit, alleging infringement of their patents and damages, and praying for accounting. The findings of fact, conclusions of law and decree determined the issues against the owners of the Rubenstein patents and they have appealed, but only from that part of the decree which declares non-infringement of their Rubenstein patent No. 2,204,152. That patent contains four claims, each alleged to have been infringed, and relates to "collars and cuffs and the

like." Claim 4 is set out in the margin as typical.[1]

It appears that the development of the modern soft shirt collar presented a field for invention beyond the older stiff starched collars. The soft collar comprises two pieces or plies of material laid out flat and stitched together around their outer margins and then folded along a longitudinal line, the fold being the uppermost edge of the collar when in use. A problem in making the more comfortable modern soft collar was to give it body and self-supporting capacity, and this was done by introducing linings between the main pieces or plies of the collar. Such linings however, increase the difficulty of locating the fold line and of accommodating the collar materials at the fold line to prevent wrinkles when the collar is folded in wearing position. The Rubenstein patent in question discloses "garment collars" to meet such requirements, alleged to constitute improvements over prior art and to embody invention.

The trial court compared its disclosures with the disclosures of the earlier patent in the same field of collars granted to Margulies, April 6, 1926, No. 1,579,879, and also with Van Heusen, No. 1,309,381; Williams, No. 1,671,563; Kohn, No. 1,014,-651, and Schloss, No. 527,561, and concluded that "if validity be accorded to the Rubenstein Patent #2,204,152", then the claims thereof "would be limited to a construction wherein there are lines of stitching connecting the adjacent edges of the interlining pieces to the under ply and stitches connecting the edge of one of said interlining pieces to the top or outer ply." It also concluded that the collar of the coat which plaintiff manufactured in accordance with the Giuseffi patent No. 2,166,566 and exemplified by Exhibit No. 1, "does not infringe * * * because both of the adjacent longitudinal edges of the interlining pieces are secured to the under ply and neither of said edges is attached to the top ply of said collar."

The court's description of the manufacture under the Giuseffi patent is clearly shown to be accurate by inspection of the Exhibit No. 1, brought up with the record, but appellants have contended orally and in extended briefs that the trial court was in error in concluding that the claims of the Rubenstein patent were limited to the extent stated. They have also contended that the action of the Patent Office, shown in the file wrapper of the Rubenstein patent, indicates intention and understanding on the part of the inventor and of the Patent Office that the claims granted to Rubenstein should be "dominating" over the claims granted in the Giuseffi patent.

The Margulies patent plainly taught that in the manufacture of soft collars interlined with supporting materials the principal difficulties of locating the fold line and of accommodating the materials to the folding, were met in large part by introducing within the collar "separate stiffening members" which left a space between their upper edges at the fold of the collar and by longitudinal parallel rows of stitching at the upper edges of the stiffening members along the line of the fold. The Rubenstein method includes and depends on both of these elements, and if its claims have anything of novelty or invention relevant to this case it must be looked for in the location or manner of stitching which they disclose. Our study of the record has led us to agree thoroughly with the conclusion of the trial court as to the limitation of the scope of the claims.

The trial court accompanied its findings, conclusions and decree with a very painstaking and inclusive written opinion in which the proceedings in the Patent Office concerning the Rubenstein patent and the relation of the claims of that patent to the Giuseffi patent were carefully considered. We think the court rightly appraised the purport of the proceedings and ascribed proper weight to the expert determinations in the Patent Office, and that the reasoning upon which it based its inferences and conclusions against any dominance of Rubenstein over Giuseffi was entirely sound.

[1] "4. A garment collar comprising a part adapted to be folded and creased along an intermediate longitudinal line to provide an inner section and an outer section, said part being made up of a top ply and an under ply superimposed one on the other, and a pair of interlining pieces in said part, one in said outer section and the other in said inner section between the top ply and the under ply thereof, said interlining pieces in the flat position of said part having their adjacent edges close together, and longitudinal rows of stitches attaching said edges to said part, said edge of the interlining piece in said outer section having stitched attachment to said under ply only of said two plies."

It is clear that although the art of making shirt collars has elements in common with the art of making coat collars, there are important differences. Very different materials are used. The collars are subjected to different stresses in use and maintenance and the coat collar is made to set in form on the wearer while the shirt collar is to be buttoned to position. The contribution of Giuseffi, to the extent of its limited claims, is particularly in the field of coat collars. The specifications, correspondence, amendments, attempts to obtain the claims of Giuseffi, the rejections, the cancellations and the claims shown by the Rubenstein file wrapper convince that Rubenstein, at the time of his alleged invention of collars, cuffs and the like, had shirt collars and cuffs in mind and that he disclosed no knowledge of tailoring coat collars. Although he was finally allowed claims for a garment collar so as to extend them so far as they may be applicable to coat collars, there was no intention in the Patent Office to grant him broad claims "dominating" the claims granted Giuseffi. On the contrary, he was granted only narrow claims limited so far as they were relevant in this case as stated by the trial court.

Though we have carefully considered all of the contentions for appellants, we find no sufficient merit in them to require further discussion and conclude that the decree appealed from is without error.

Affirmed.